**AQUATHERM INDUSTRIES, INC., Plaintiff,**

v.

**FLORIDA POWER & LIGHT COMPANY, Defendant.**

**No. 92–1047–CIV–ORL–22.**

United States District Court, M.D. Florida, Orlando Division.

July 9, 1997.

---

Blaine H. Winship, Winship & Byrne, Miami, FL, for Plaintiff.

Elizabeth J. Du Fresne, Steel, Hector & Davis, Miami, FL, for Defendant.

## *ORDER*

CONWAY, District Judge.

This cause comes before the Court on Defendant Florida Power & Light Company's Motion to Dismiss the Amended Complaint with Prejudice [1] and Aquatherm's Response [2] to the Motion.

### Procedural History

Plaintiff Aquatherm Industries, Inc. filed its initial action against Defendant Florida Power & Light Company ("FPL") in Florida state court alleging violations of Florida's antitrust laws. Aquatherm then amended its complaint to include a trademark claim based on the federal Lanham Act. FPL removed the entire action to federal court based on the assertion of this federal claim. Aquatherm thereafter amended its complaint a second time, deleting its Lanham Act claim and moved the federal court to remand the action to state court. Aquatherm's motion was

---

1. FPL filed an erroneous "Notice to the Court" that its Motion had been pending since "June 17, 1997, without disposition." Doe. 82. According to the Court file, FPL mistakenly filed a Memorandum of Law in Support of A Renewed Melon to Dismiss (Doe.72), without filing "the Renewed Motion," in violation of the Local Rules. The Court ordered FPL to file a Motion to Dismiss or have the Memorandum stricken; the Motion was then filed in compliance with the Court's order on December 20, 1996 (Doc. 80).

2. Aquatherm filed a twenty-page memorandum of law which was not double-spaced (twenty-two lines per page), as required by Local Rule 1.05(a), but was only one-and-a-half spaced (thirty-one lines per page). The actual length of Aquatherm's memorandum, if properly double-spaced, would have been twenty-eight pages and would have exceeded twenty pages filed by former cocounsel for Aquatherm. Dec. 33. Future violations of the local or federal rules will result in sanctions.

granted, and Aquatherm then amended its complaint a third time to add state counts of trade libel and product disparagement. The Florida trial court dismissed all counts with prejudice, and that decision was affirmed by Florida's Fourth District court of Appeal.

While Aquatherm's case was still before the Florida trial court, Aquatherm filed the instant action in this Court, alleging FPL's violations of federal antitrust laws under the Sherman Act and federal trademark law under the Lanham Act. Aquatherm did not deny that the same factual allegations served as the basis for both the state action and the federal claims. Aquatherm then amended this complaint, not to make any new factual allegations, but merely to add claims under the federal Clayton Act. This Court dismissed Aquatherm's Amended Complaint on the grounds that Aquatherm was barred by principles of *res judicata* from bringing the present action in federal court after losing on the same facts at the state court level.

On appeal, the Eleventh Circuit held that *res judicata* barred only Aquatherm's Lanham Act claims but did not preclude Aquatherm's pursuit of its federal antitrust claims. FPL now moves the Court to dismiss Aquatherm's Amended Complaint for failure to state a claim upon which relief may be granted pursuant to the Sherman and Clayton Antitrust Acts. For the grounds set forth below, the Court finds that FPL's Motion to Dismiss the Amended Complaint with Prejudice is due to be granted.

### Standard for Motion to Dismiss

█ The accepted rule is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The material allegations of the complaint are taken as true for the

purpose of deciding a motion to dismiss. *St. Joseph's Hospital v. Hospital Corp. of America*, 795 F.2d 948 (11th Cir.1986). The liberal standard of Rule 8 is also generally accepted as the standard in an antitrust action. *Id.* at 954; *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980).

█ Although "notice pleading is all that is required for a valid antitrust complaint, a plaintiff must plead sufficient facts so that each element of the alleged antitrust violation can be identified." *Municipal Util. Bd. of Albertville v. Alabama Power Co.*, 934 F.2d 1493, 1501 (11th Cir.1991)(quoting *Quality Foods de Centro America, S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir.1983)). Conclusory allegations "will not survive a motion to dismiss if not supported by facts constituting a legitimate claim for relief ... [h]owever, the alleged facts need not be spelled out with exactitude, nor must recovery appear imminent." *Board of Albertville*, 934 F.2d at 1501.

As one court recognized, litigation today is "too expensive a process to waste time on fanciful claims." *Commonwealth of Pennsylvania v. PepsiCo*, 836 F.2d 173, 182 (3d Cir.1988).

When the requisite elements are lacking, the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint.

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821, *quoted in PepsiCo*, 836 F.2d at 182. The same sentiment was expressed by another trial court in *Pao v. Holy Redeemer Hospital*, 547 F.Supp. 484 (E.D.Pa.1982), where the complaint was dismissed with prejudice:

Although this is plaintiffs second attempt to state a valid Sherman Act claim, the complaint still offers only uncertain clues

as to plaintiffs theory of liability and the facts which would support a finding of Sherman Act liability. It is simply not fair to the defendants, and it would be an onerous imposition on the judicial process, to permit litigation to go forward on the basis of such conclusory and speculative allegations.

*Id.* at 491. For the reasons set forth below, the Court finds that the "conclusory and speculative allegations" of Aquatherm's Amended Complaint are due to be dismissed.

## Background Facts

The following facts are undisputed or read in the light most favorable to Aquatherm.

Aquatherm is a manufacturer of solar-powered heating systems for swimming pools. Solar pool heaters compete with pool heating systems powered by alternative energy sources, including natural gas, propane gas, electrical resistance, and electrical heat pumps. FPL is a regulated utility that sells electricity in an area of Florida containing more than 250,000 in-ground swimming pools. Electric pool heat pumps operate at a constant, high load factor, which indirectly benefits FPL by increasing the utilization of its system; however, FPL does not manufacture or sell electric pool heating pumps, nor does it benefit directly from the sale of heat pumps.

In 1987 and 1988, FPL began a program promoting the use of electric pool heat pumps as the most economical way to heat commercial and residential swimming pools. In a direct mail advertising campaign to FPL customers, FPL informed commercial pool customers that pool heat pumps were the "lowest-cost way for you to keep your pool at tropical temperature all winter" and the "smartest, most economical way to heat a pool" in comparison to natural gas, propane and other fossil-fuel alternatives, but not in comparison to solar pool heaters. FPL also advertised these claims in newspapers and

radio stations; provided a list of FPL participating contractors that sell and install electric pool heat pumps, gave awards for the most installations of electric pool heat pumps; provided cash rebates to customers choosing electric pool heat pumps; and provided "free energy audits" to customers owning swimming pools. Aquatherm contends that these promotion activities unfairly advantaged the market for electric pool heaters and severely restrained the market for the sale of pool heaters.

## Analysis

Aquatherm asserts claims pursuant to the Sherman and Clayton Antitrust Acts for monopolization; monopoly leveraging; attempted monopolization; conspiracy to monopolize; and conspiracy to restrain trade or group boycott.[3] FPL contends that Aquatherm's Amended Complaint fails to state a claim upon which relief may be granted because FPL is not a competitor in the relevant pool heater market, as required by antitrust law. In response, Aquatherm does not dispute that FPL is not a competitor in the relevant pool heater market; rather, Aquatherm argues that (1) FPL need not be a competitor of Aquatherm in the relevant market for the conspiracy counts; and (2) that the Court should view FPL as a competitor because FPL's desire to increase electricity consumption gives it a powerful financial incentive to assure the success of electric pool heaters.

Section 2 of the Sherman Act prohibits monopolization, attempted monopolization, and conspiracy or combination to monopolize any part of trade or commerce. 15 U.S.C.A. § 2 (West 1997). Section 4(a) of the Clayton Act allows an injured party to bring a private antitrust action to recover treble damages for injuries to its business resulting from violation of the antitrust laws. 15 U.S.C.A. § 15(a) (West 1997).

*I. Monopoly and attempted monopoly*

■ The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the

3. Aquatherm's claim for violation of the federal Lanham Act was previously dismissed on *res* *judicata* grounds.

possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); *Levine v. Central Fla. Medical Affiliates, Inc.*, 72 F.3d 1538, 1555 (11th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 75, 136 L.Ed.2d 34 (1996); *T. Harris Young & Assoc., Inc. v. Marquette Elec., Inc.*, 931 F.2d 816, 823 (11th Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991); *Austin v. Blue Cross & Blue Shield*, 903 F.2d 1385, 1391 (11th Cir.1990).

▪▪▪ In comparison, "to establish a violation of § 2 for attempted monopolization, a plaintiff must show (1) an intent to bring about a monopoly and (2) a dangerous probability of success." *Levine*, 72 F.3d at 1555–56; *Norton Tire Co. v. Tire Kingdom Co.*, 858 F.2d 1533, 1535 (11th Cir.1988); *see also Retina Assoc., P.A. v. Southern Baptist Hospital of Fla., Inc.*, 105 F.3d 1376, 1384 (11th Cir.1997) (to prove attempted monopolization, a plaintiff must prove that: (1) defendant has engaged in predatory or anticompetitive conduct; (2) a specific intent on defendant's part to monopolize; and (3) a dangerous probability of achieving monopoly power); *McGahee v. Northern Propane Gas Co.*, 858 F.2d 1487, 1493 (11th Cir.1988), *cert. denied*, 490 U.S. 1084, 109 S.Ct. 2110, 104 L.Ed.2d 670 (1989); 3 Phillip Areeda & Donald F. Turner, *Antitrust Law*, ¶ 820 (1978).

> To have a dangerous probability of successfully monopolizing a market the defendant must be close to achieving monopoly power. Monopoly power is "the power to raise prices to supra-competitive levels or ... the power to exclude competition in the relevant market either by restricting entry of new competitors or by driving existing competitors out of the market."

*U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.*, 7 F.3d 986, 994 (11th Cir.1993)(quoting *American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1581 (11th Cir.1985)), *cert. denied*, 512 U.S. 1221, 114 S.Ct. 2710, 129 L.Ed.2d 837 (1994), *quoted in Levine*, 72 F.3d at 1556.

▪▪▪ Essential to either a § 2 monopolization or attempted monopolization claim is the defining of the relevant market, which is the antitrust plaintiff's burden. The definition of the relevant market is "essentially a factual question" with two components: the relevant product market and the relevant geographic market. *U.S. Anchor Mfg.*, 7 F.3d at 994. Failure to allege either the product or geographic market in the complaint is fatal to the plaintiff's claims. *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1348 (3d Cir.1975) (stating that the definition of the relevant market is critical); *Blackwell v. Power Test Corp.*, 540 F.Supp. 802, 809 (D.N.J.1981) (dismissing complaint for failure to allege relevant market), *aff'd*, 688 F.2d 818 (1982); *Essex Int'l, Inc. v. Industra Prods., Inc.*, 64 F.R.D. 361, 364 (N.D.Ind.1974) (holding that plaintiff is required to allege "in realistically definitive terms the existence of monopoly power (through market share or otherwise) or the existence of a dangerous proximity to achievement of monopoly").

▪▪▪ The relevant product market must include "those products or services that are either (1) identical to or (2) available substitutes for the defendants' product or service." *International Logistics Group, Ltd. v. Chrysler Corp.*, 884 F.2d 904, 908 (6th Cir.1989) (quoting *White & White, Inc. v. American Hosp. Supply Corp.*, 723 F.2d 495, 500 (6th Cir.1983)), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990); *Syufy Enterprises v. American Multicinema, Inc.*, 793 F.2d 990, 994 (9th Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 876, 93 L.Ed.2d 830 (1987). "The reasonable interchangeability ... between a product and its substitutes" is an important consideration, as is the cross-elasticity of demand for the products. *U.S. Anchor Mfg.*, 7 F.3d at 995 (interchangeability) (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 325, 82 S.Ct. 1502, 1523–24, 8 L.Ed.2d 510 (1962)); *Fine-*

*man v. Armstrong World Indus., Inc.,* 980 F.2d 171, 198–99 (3d Cir.1992) (cross-elasticity), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993). *See also Smith-Kline Corp. v. Eli Lilly & Co.,* 575 F.2d 1056, 1063 (3d Cir.) (describing the relevant product market as "those groups of producers which, because of the similarity of their products, have the ability—actual or potential—to take significant amounts of business away from each other"), *cert. denied,* 439 U.S. 838, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978). The relevant "geographic" market includes "the area in which a potential buyer may rationally look for the goods or services he or she seeks." *Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.,* 953 F.Supp. 617, 644–45 (E.D.Pa.1997).

Virtually all of the case law in the Eleventh Circuit (and other circuits) on the issue of defining the relevant market deals with restricting or expanding the product or geographic markets. *See, e.g., Thompson v. Metropolitan Multi–List, Inc.,* 934 F.2d 1566, 1573 (11th Cir.1991) (discussing how to define geographic market), *cert. denied,* 506 U.S. 903, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992); *American Key Corp. v. Cole Nat. Corp.,* 762 F.2d 1569, 1580–81 (11th Cir.1985) (rejecting plaintiff's artificially narrow definition of relevant geographic market); *Heatransfer Corporation v. Volkswagenwerk, A.G.,* 553 F.2d 964, 981 (5th Cir.1977) (discussing the adaptability or substitutability of products in defining relevant market), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

■ This case law is of limited value in the instant case because Aquatherm defines the relevant market as the pool heating market in the territory of Florida in which FPL sells electricity, but concedes that FPL does not sell pool heaters. *See* Doc. 23, Amended Complaint. Aquatherm fails to allege that FPL possessed or was close to possessing monopoly power in the pool heater market as a competitor. Instead, Aquatherm stretches the definition of relevant market to argue that there are two potential relevant product

markets, apparently interchangeable: 1) the market for the sale of electric power; and 2) the market for the sale of pool heating systems. The Court finds that the market for sale of electric power is not the relevant market for Aquatherm's claims; the relevant market in this case is some subset of the pool heater market, which has yet to be properly defined by Aquatherm.

■ Aquatherm does not allege that FPL is a competitor in the pool heater market, but merely that FPL "has a powerful financial incentive to assure the success of heat pump systems, inasmuch as the use of such systems causes increased demand for electricity during non-peak times, thereby enhancing FPL's monopoly profits." Proof of monopoly power in the relevant market is the first element of a monopolization claim, and proof that there is a dangerous probability of the defendant successfully attaining monopoly power is the second element of an attempted monopolization claim. *Levine,* 72 F.3d at 1556. Failure to allege these elements is fatal to Aquatherm's § 2 claims for monopolization and attempted monopolization and these claims are due to be dismissed. *Cf. id.* (granting summary judgment against plaintiff who failed to adequately define relevant market).

## II. Conspiracy to monopolize

■ Aquatherm contends that FPL need not be a competitor in the relevant pool heater market for Aquatherm to assert an antitrust claim for conspiracy to monopolize. It is true that a claim for conspiracy to monopolize does not require a showing of monopoly power. *Levine,* 72 F.3d at 1556. Instead, to establish a claim for conspiracy to monopolize a plaintiff must allege: "(1) concerted action deliberately entered into with the specific intent of achieving a monopoly; and (2) the commission of at least one overt act in furtherance of the conspiracy." *Id.* (citing *Todorov v. DCH Healthcare Authority,* 921 F.2d at 1460 n. 35 (11th Cir.1991)). Aquatherm alleges that FPL conspired with "manufacturers and sellers of electric pool

heat pumps and pool contracting firms" to achieve a monopoly in the pool heating market. FPL responds that, as a preliminary matter, it is not a competitor trying to achieve a monopoly in the electric pool heater market. Aquatherm cites *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369 (10th Cir.1979), for the holding that coconspirators who compete in markets different from the plaintiff's may still be found liable for conspiracy to monopolize plaintiff's market. *Id.* at 1377. However, *Perington* is distinguishable from the instant case in that the coconspirator who was not a competitor in the paper product market, Burger King, terminated Perington in favor of its wholly-owned subsidiary who was a competitor in the paper product market. *Id.* at 1374–75. Thus, Burger King, through its wholly-owned subsidiary was a competitor in the relevant market.

The other cases that Aquatherm cites are equally inapposite for basically the same reason. While one of the coconspirators, at first glance, may appear to be a non-competitor, upon further analysis the courts typically determine that the coconspirator has financial ownership or some other strong financial tie, and, thus a vested interest in a competitor in the relevant market. *See, e.g., Loewe v. Lawlor*, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488 (1908)(a combination by members of labor organizations to destroy an existing interstate traffic in hats by preventing the manufacturers, through the instrumentality of a boycott, from manufacturing hats is a combination in restraint of trade); *United States v. General Motors Corp.*, 121 F.2d 376 (7th Cir.) (defendants could not escape liability on ground that they were affiliated and noncompeting units where automobile manufacturer owned all stock of automobile sales company and of finance company which in turn owned all stock of another finance company and the four were charged with conspiracy to restrain trade), *cert. denied*, 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497 (1941); *Patterson v. United States*, 222 F. 599, 610 (6th Cir.) (conspiracy consisted of 30 officers and agents who, for about 20 years had been connected with the National Cash Register Company), *cert. denied*, 238 U.S. 635, 35 S.Ct. 939, 59 L.Ed. 1499 (1915); *Dupont Glore Forgan Inc. v. American Telephone & Telegraph*, 437 F.Supp. 1104 (S.D.N.Y.1977) (telephone company and its affiliates were not exempt from antitrust liability by virtue of mere fact that affiliates were all wholly or partially owned subsidiaries), *aff'd*, 578 F.2d 1367 (2d Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 465, 58 L.Ed.2d 431 (1978). Aquatherm has failed to allege such a relationship between FPL and a competitor in the relevant pool heating market.

FPL contends that both of Aquatherm's conspiracy counts (to monopolize and to restrain trade) suffer from the same defect: Aquatherm has failed to identify with "clarity the precise parties and the precise subject matter of the alleged conspiracy," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). FPL contends that there are no allegations in the Amended Complaint regarding when, where, or how the alleged conspiracies were created,'the same deficiency which required the dismissal of the conspiracy claims by the Eleventh Circuit in *Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir.1985), *cert. denied*, 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). Aquatherm contends that it need not specifically identify FPL's co-conspirators in order to assert a claim for conspiracy to monopolize and that the specific facts regarding "FPL's collusive activities will be developed further through pretrial discovery." Professors Areeda and Turner warn against the allowance of such conclusory claims "to be developed through pretrial discovery":

> [A] party should be obliged to state the theories of [its] claim early in the litigation in meaningful language other than the conclusory language of the statute. This is not meant to be a formal insistence on common law pleading but to emphasize that a party must state the substantive propositions to be tested legally and factually by the litigation. [T]o the extent that summary disposition need not await dis-

covery, a claimant must allege, at least as possible hypotheses, the facts that would entitle [it] to prevail under [its] chosen legal theories. The degree of detail will, of course, depend upon the particular claim, but a statement of legal conclusions would clearly be insufficient.... There are several reasons why a party states [its] claim in the conclusory language of the statute—for example, that defendant "conspired in restraint of trade" or "attempted to monopolize" commerce.... [The party] may not have thought through and determined [its] legal theories, and thus does not know which facts might be relevant. Or [it] might be genuinely uncertain about the content of the offense or about the facts that exist or can be proved. Or [it] may be rather completely ignorant about the facts and wish either to harass the defendant, quite apart from any ultimate recovery, or to win the opportunity to discover the defendant's files or to depose [its] officials, in the hope of turning up something that will support a lawsuit or a settlement.

2 Phillip Areeda and Donald F. Turner, *Antitrust Law*, ¶¶ 317a, 317b (1978).

 In Count III of the Amended Complaint, which asserts a claim for Conspiracy to Monopolize, Aquatherm alleges the following:

57. The Defendant [FPL] combined and conspired in a concerted action with manufacturers and sellers of electric pool heat pumps and pool contracting firms in its geographic area with a specific intent to achieve a monopoly in the pool heating market for the purpose of increased consumption of power by [FPL] customers who purchase these electric pool heat pumps in violation of 15 U.S.C.S. § 2.

Doc. 23. Such vague, conclusory allegations are insufficient to state a claim upon which relief can be granted. "[E]nough data must be pleaded so that each element of the alleged antitrust violation can be properly identified." *Lombard's*, 753 F.2d at 975 (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957)). Con-

clusory allegations of conspiracy in violation of the Sherman Act are insufficient to survive a motion to dismiss. *Lombard's*, 753 F.2d at 975. As the Third Circuit has held:

A general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action. Although detail is unnecessary, the plaintiffs must plead the facts constituting the conspiracy, its object and accomplishment. The plaintiffs have pleaded none of these facts. Neither the date of the alleged conspiracy nor its attendant circumstances are set forth. Nor is it averred who made the statements, where, when or to whom.

*Commonwealth of Pennsylvania v. PepsiCo*, 836 F.2d 173, 182 (3d Cir.1988) (quoting *Black & Yates v. Mahogany Ass'n*, 129 F.2d 227, 231–32 (3d Cir.1941)). *See Heart Disease Research Foundation v. General Motors Corp.*, 463 F.2d 98, 100 (2d Cir.1972) ("Although the Federal Rules permit statement of ultimate facts, a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal."); *Garshman v. Universal Resources Holding, Inc.*, 824 F.2d 223, 230 (3d Cir.1987) ("The allegation of unspecified contracts with unnamed other entities to achieve unidentified anticompetitive effects does not meet the minimum standards for pleading a conspiracy in violation of the Sherman Act"); *Fort Wayne Telsat v. Entertainment and Sports Programming Network*, 753 F.Supp. 109, 115 (S.D.N.Y.1990) (plaintiff must do more than merely allege that a conspiracy exists, it must provide some factual basis for that allegation); *Ajax/Acorn Manufacturing, Inc. v. Berman Sales Co., Inc.*, 1991 WL 224997, at *3 (E.D.Pa. Oct.30, 1991) ("Although detail is unnecessary, the plaintiffs must plead the facts constituting the conspiracy, its object and accomplishment."). *Cf. Christen Inc. v. BNS Industries, Inc.*, 517 F.Supp. 521, 524 (S.D.N.Y.1981)(party need not name the co-conspirators in its allegations as long as it identifies them with sufficient particularity).

In *Lombard's, Inc. v. Prince Mfg., Inc.*, the Eleventh Circuit affirmed dismissal of

conspiracy allegations which alleged, similar to Aquatherm's claim, that "[Defendant] together and with [Defendant's] dealers and others at this time unknown to [Plaintiff], have attempted, and are now attempting, to prevent [Plaintiff] from making wholesale and mail order sales...." *Id.* at 975. Aquatherm attempts to distinguish its case from *Lombard's* by arguing that *Lombard's* was a dealer-termination case and that the dismissal in *Lombard's* "must be read in th[at] context." This Court finds no such qualification limiting the holding of *Lombard's* to dealer-termination cases. Rather, the *Lombard's* opinion dealt with the insufficiency of antitrust conspiracy claims. "Thus not only are no facts alleged to demonstrate the conspiracy but the specific participants of the conspiracy are not even identified." *Id.* at 975. If anything, Aquatherm's conspiracy claims are even more tenuous than the dealer-termination situation since, in this case, Aquatherm fails to allege any pre-existing (and subsequently terminated) supplier or manufacturer relationship between FPL and Aquatherm.

Aquatherm contends that it need not identify the coconspirators with any particularity. Aquatherm's reliance on *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 142, 88 S.Ct. 1981, 1986, 20 L.Ed.2d 982 (1968), is misplaced. In *Perma Life,* the plaintiffs, Midas dealers, alleged that defendant, Midas's parent corporation, had entered into a conspiracy, and the plaintiffs specifically named the alleged coconspirators as two other subsidiaries and six individual defendants who were officers or agents of the corporations. The holding that Aquatherm misstates to this Court in its memorandum did not in any way address the identity of the coconspirators. Rather, the Supreme Court merely held that the plaintiffs could assert antitrust conspiracy theories that they had not asserted with sufficient specificity in their complaint. *Id.* at 142, 88 S.Ct. at 1986. Aquatherm's reliance on *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), is equally misplaced because the supposedly

unnamed coconspirators, "unnamed concrete firms" in New Orleans, were easily identified since they were named in a criminal indictment brought two years before the private antitrust action was filed. *Id.* The third case relied on by Aquatherm, *Brett v. First Federal Savings & Loan Ass'n,* 461 F.2d 1155, 1158 (5th Cir.1972), is also unavailing since the plaintiffs specifically named the alleged coconspirators. The Court finds Aquatherm's allegations of conspiracy are due to be dismissed.

### III. Group boycott or conspiracy to restrain trade

Aquatherm also alleges that FPL orchestrated a group boycott, or a concerted refusal to deal, violative of § 1 of the Sherman Act as a combination in restraint of trade. Aquatherm contends that its group boycott claim is supported by (1) FLP's advertising and promoting, and paying rebates to purchasers of, electric pool heat pumps, and (2) "contractors" referrals of pool purchasers to FPL, who would recommend to customers that they purchase electric pool heat pumps. In response, FPL argues that, as an initial matter, the Amended Complaint fails to allege among whom the conspiracy existed, or that any "patronage or service" was withheld, or how the purported boycott actually "restrained trade." *Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co.,* 657 F.Supp. 136, 141 (E.D.N.Y.1987) (to survive a motion to dismiss, allegations of an illegal conspiracy in restraint of trade under § 1 must identify the co-conspirators and describe the nature and effects of the alleged conspiracy).

 Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade among the several States or with foreign nations...." A plaintiff must establish an agreement between two or more persons to restrain trade affecting interstate commerce; unilateral conduct will not trigger the prohibition of § 1. *Copperweld Corp. v. Indepen-*

*dence Tube Corp.,* 467 U.S. 752, 768, 104 S.Ct. 2731, 2740, 81 L.Ed.2d 628 (1984); *Monsanto Co. v. Spray–Rite Serv. Corp.,* 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984); *Todorov v. DCH Health-care Auth.,* 921 F.2d 1438, 1455 (11th Cir. 1991). As the Supreme Court has held:

> First, there is the basic distinction between concerted and independent action—a distinction not always clearly drawn by parties and courts. Section 1 of the Sherman Act requires that there be a "contract, combination ... or conspiracy" between the manufacturer and other distributors in order to establish a violation. 15 U.S.C. § 1. Independent action is not proscribed. A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently.

*Monsanto,* 465 U.S. at 761, 104 S.Ct. at 1469 (citing *United States v. Colgate & Co.,* 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919) and *United States v. Parke, Davis & Co.,* 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960)). "Even where a single firm's restraints directly affect prices and have the same economic effect as concerted action might have, there can be no liability under § 1 in the absence of agreement." *Fisher v. City of Berkeley,* 475 U.S. 260, 266, 106 S.Ct. 1045, 1049, 89 L.Ed.2d 206 (1986). Liability will only attach to agreements designed unreasonably to restrain trade in, or affecting, interstate commerce; thus, before analyzing the reasonableness of any alleged restraint on trade, courts must first ensure that an agreement to restrain trade exists. *Todorov,* 921 F.2d at 1455.

In this case, Aquatherm fails to state a claim for group boycott. First, Aquatherm does not allege a restraint on trade, only its own lost sales. Second, Aquatherm alleges that FPL merely recommended electric pool heaters, rather than solar heaters, or for that matter, rather than natural gas, propane, or electric resistance heaters; Aquatherm does not allege (and FPL contends it cannot allege) that FPL refused to allow participating contractors to buy solar pool heaters or sell them to customers. In addition, even assuming *arguendo* that Aquatherm had properly alleged that FPL refused to deal with solar pool heater manufacturers, Aquatherm has alleged nothing more than a unilateral refusal by FPL alone to deal with sellers of solar heaters and such unilateral action is not proscribed by § 1.

Even when the allegations of the Amended Complaint are viewed in the light most favorable to Aquatherm, it fails to allege that contractors who referred new pool owners to FPL for pool heater advice were acting under a concerted "refusal to deal" with solar pool heater sellers. Aquatherm falls far short of alleging that the FPL targeted it for boycott by the "withholding, or enlisting [of] others to withhold, patronage or services...." *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 541, 98 S.Ct. 2923, 2930, 57 L.Ed.2d 932 (1978)(boycott is the "pressuring [of] a party with whom one has a dispute by withholding, or enlisting others to withhold, patronage or services from the target").

FPL also contends that Aquatherm has failed to allege that the alleged boycotters, FPL and the "contractors," have sufficient market power to prevent the target from competing effectively on equal terms in the relevant market. *United States v. Realty Multi–List, Inc.,* 629 F.2d 1351, 1372 (5th Cir.1980)(holding that the restraint has sufficient adverse competitive impact to violate § 1 when the cooperating group possesses sufficient market power that a nonmember can no longer compete effectively with members). The Court finds that Aquatherm has failed to adequately allege a "concerted refusal" to buy from Aquatherm or manufacturers of solar pool heaters.

### IV. Monopoly leveraging

In the Amended Complaint, Aquatherm alleges that FPL used its monopoly power in the electricity market to gain a competitive advantage and foreclose competition in the pool heater market and increase FPL's profits from the sale of electricity. Aquatherm

argues that FPL has "abused" its monopoly power because FPL is "viewed by consumers as being especially knowledgeable and credible in opining on energy matters;" FPL could conduct "free" energy audits for its customers; FPL could use its monopoly profits to underwrite the heat pump campaign; and FPL could endorse particular products and pool contractors.

■■■ As FPL points out, and Aquatherm concedes,[4] the monopoly leveraging theory is not yet accepted by the Eleventh Circuit or the Supreme Court. The Second Circuit, in *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 274 (2d Cir.1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980), held that "a firm violates § 2 by using monopoly power in one market to gain a competitive advantage in another, albeit without an attempt to monopolize the second market." 603 F.2d at 275. In the single Eleventh Circuit case to consider the monopoly leveraging theory, *Key Enterprises of Delaware, Inc. v. Venice Hosp.,* 919 F.2d 1550, 1566–1568 (11th Cir.1990), *reh'g granted,* 979 F.2d 806 (11th Cir.1992), *vacated as moot,* 9 F.3d 893 (11th Cir.1993), *cert. denied,* 511 U.S. 1126, 114 S.Ct. 2132, 128 L.Ed.2d 863 (1994), the three-judge panel defined monopoly leveraging:

> when a party with monopoly power abuses its monopoly power in one market as a means of gaining an unlawful competitive advantage in *and monopolizing* another market, we have no hesitation to conclude that the Sherman Act prohibits such conduct.

919 F.2d at 1568 (emphasis added). The three-judge panel analyzed the claim as a § 2 attempt to monopolize claim, rather than as a separate offense under the Sherman Act. *Id.* at 1567 (citing *Otter Tail Power v. United States,* 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973)("Use of monopoly power to destroy threatened competition is a violation of the attempt to monopolize clause of § 2 of the Sherman Act.")).

The Eleventh Circuit later vacated the panel's decision and granted the motion for rehearing *en banc. Key Enterprises of Delaware, Inc. v. Venice Hosp., reh'g granted,* 979 F.2d 806 (11th Cir.1992). On learning that the parties had settled the case, the Eleventh Circuit vacated the order granting *en banc* review, returned the case to the panel with instructions that it dismiss the appeal, vacated the district court's judgment, and remanded the case to the district court to dismiss, and thereby purposely vacated the three-judge panel's adoption or endorsement of any monopoly leveraging theory for the Eleventh Circuit. *Key Enterprises of Delaware, Inc. v. Venice Hosp.,* 9 F.3d 893, 895 (11th Cir. 1993) ("indeed [the plaintiff] believed that it would be able to require this court to decide the case in accordance with its dictates ... [and] the panel's decision would become the law of this circuit...."). No subsequent Eleventh Circuit case has recognized the monopoly leveraging theory as advanced by Aquatherm.

Nor do Aquatherm's claims fit the traditional definition of monopoly leveraging summarized by Chief Judge Tjoflat in his dissenting opinion in *Consolidated Gas Company of Florida, Inc. v. City Gas Company of Florida:* "monopoly leveraging is when a vertically integrated monopolist—i.e., a monopolist that operates on several levels of the market—uses its monopoly power on one level of the market to gain a competitive advantage on another level of the market." 912 F.2d 1262, 1284–85 (11th Cir.1990) (Tjoflat, C.J., dissenting) (citing illustrative case of *United States v. Terminal R.R. Ass'n,* 224 U.S. 383, 32 S.Ct. 507, 56 L.Ed. 810 (1912), in which a group of railroads who owned only railroad terminal in city and used their monopoly power over the terminal as a lever to overcharge other railroads for access to the terminal), *cert. granted,* 499 U.S. 915, 111 S.Ct. 1300, 113 L.Ed.2d 235, *judgment vacated as moot,* 931 F.2d 710 (11th Cir.1991).

■■■■ Even assuming *arguendo* that the monopoly leveraging theory asserted by

4. Doe. 76 at 18 ("While neither the Supreme Court nor the Eleventh Circuit has yet decided whether to follow *Berkey Photo* in assessing a claim of monopoly leveraging ...").

Aquatherm, and as stated in *Berkey Photo,* were adopted by the Eleventh Circuit, Aquatherm still would not state a claim for relief under that theory. To state a claim, Aquatherm would have to allege that FPL used its electric power monopoly to increase FPL's strength in the pool heater market. The crucial element that is missing is FPL's status as a competitor in the pool heater market. In *Berkey Photo,* the Second Circuit recognized a claim for monopoly leveraging where the plaintiff alleged that Kodak attempted to use its monopoly power in the film and camera markets to gain a competitive advantage in the photofinishing equipment and services market. 603 F.2d at 275–76.

In the instant case, Aquatherm does not allege FPL is a competitor in the pool heater market. In fact, Aquatherm concedes that monopoly leveraging claims arise from the conduct of "monopolists seeking unfair advantages as *competitors* in other markets." Doc. 76 at 18. However, Aquatherm urges the Court to extend the *Berkey Photo* theory of monopoly leveraging (not yet accepted by the Eleventh Circuit) even further to encompass "a situation in which the monopolist seeks to profit by helping others to obtain an unfair advantage in another market where *the monopolist does not itself compete.*" Doc. 76 at 19. Aquatherm's proposed monopoly leveraging theory has no support in the law of this circuit, in other circuits, or in the antitrust statutes. Aquatherm's monopoly leveraging claim is due to be dismissed.

Based on the foregoing, it is ordered as follows:

1. Florida Power & Light Company's Motion to Dismiss the Amended Complaint With Prejudice (Doc. 80) is GRANTED.

2. The Clerk is directed to CLOSE the file.