United States Court of Appeals,

Eleventh Circuit.

No. 97-2959.

AQUATHERM INDUSTRIES, INC., Plaintiff-Appellant,

v.

FLORIDA POWER & LIGHT COMPANY, Defendant-Appellee.

July 8, 1998.

Appeal from the United States District Court for the Middle District of Florida. (No. 92-1049-Civ-Orl-22), Anne C. Conway, Judge.

Before HATCHETT, Chief Judge, and RONEY and LAY[*], Senior Circuit Judges.

LAY, Senior Circuit Judge:

Aquatherm Industries ("Aquatherm") appeals the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) of antitrust claims filed against Florida Power & Light ("FPL"). We affirm.

I.

Aquatherm is a Delaware corporation that manufactures solar-powered heating systems for swimming pools. FPL is the exclusive provider of electric power in approximately two-thirds of the state of Florida. In 1988, through advertising and direct mailing to its customers, FPL promoted the use of electric pool-heating pumps ("PHPs") as an economical way to heat residential swimming pools. FPL does not sell PHPs or any other swimming pool equipment. Its admitted sole purpose was to increase use of electrical power. The campaign promoted electric PHPs as "the most

[*]Honorable Donald P. Lay, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

cost-effective pool heating method available." FPL made these comparisons to natural gas, propane, and other fossil-fuel heating alternatives, but made no comparisons to solar pool heaters.

Aquatherm filed this action alleging that FPL, through false advertising relating to PHPs, had violated federal antitrust and Lanham Act provisions. The district court dismissed the suit in December 1994, stating an earlier state court determination constituted res judicata on Aquatherm's federal claims.[1] On appeal, this court held that res judicata barred any Lanham Act claims, but not the later-filed federal antitrust claims. *See Aquatherm Indus., Inc. v. Florida Power & Light Co.,* 84 F.3d 1388 (11th Cir.1996). Upon remand, FPL filed a 12(b)(6) motion as to the remaining antitrust claims. The district court[2] granted the motion to dismiss the case with prejudice, finding Aquatherm had failed to state a claim upon which relief could be granted. *See Aquatherm Indus., Inc. v. Florida Power & Light Co.,* 971 F.Supp. 1419 (M.D.Fla.1997). This appeals follows.

## II. Aquatherm's Section 2 Claims

### A. Monopolization/Attempt to Monopolize

---

[1]In December 1991, Aquatherm originally filed suit against FPL in Florida state court, alleging the company engaged in false and deceptive advertising, violated Florida's antitrust laws, and Florida's Energy Efficiency and Conservation Act. In February 1992, the state court dismissed all four counts, but granted leave to amend the antitrust claims. Aquatherm amended its complaint to include federal trade and antitrust violations, including false and deceptive advertising, monopoly leveraging, attempted monopolization, and conspiracy to monopolize.

FPL removed the case to federal court, and Aquatherm in turn withdrew its federal claim for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a). The case was remanded to state court, where in November 1992, the third amended complaint was dismissed with prejudice. The dismissal was affirmed without opinion by the Florida Court of Appeals in March 1994.

[2]The Honorable Anne C. Conway, District Judge for the Middle District of Florida, presiding.

2

Aquatherm asserts that FPL has violated § 2 of the Sherman Antitrust Act which prohibits both monopolization and attempted monopolization. *See* 15 U.S.C. § 2. In asserting its § 2 claims, Aquatherm identifies two possible relevant markets, arguing that FPL either 1) wrongly attempted to prevent erosion of its electric power monopoly, or 2) wrongly interfered with the pool-heater market in order to increase its profits.[3] We find that the monopolization and attempted monopolization claims are problematic under either relevant market formulation asserted by Aquatherm.

First, as FPL correctly points out, under the facts pled there exists no allegation that FPL's actions increased its market share in the electric power market (which, as a regulated monopoly, stands at 100%), or erected any kind of barrier of entry into the electric power market. On the other hand, if pool heaters are the relevant market, there is no allegation that FPL held or attempted to create a monopoly in this market. In fact, Aquatherm does not assert that FPL ever *competed* in the pool-heater market.

In addition, there is no showing that FPL held any kind of monopoly in a broader energy market, or that its alleged actions raised a "dangerous probability" of achieving such a monopoly. *See Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 890, 122 L.Ed.2d 247 (1993); *Technical Resource Services, Inc. v. Dornier Medical Sys., Inc.,* 134 F.3d 1458, 1466 (11th Cir.1998). Aquatherm's failure to support these essential elements is fatal to any claims of monopolization, or attempt to monopolize.

---

[3]In granting FPL's motion to dismiss, the district court found that "the market for sale of electric power is not the relevant market for Aquatherm's claims; the relevant market in this case is some subset of the pool heater market, which has yet to be properly defined by Aquatherm." 971 F.Supp. at 1427.

B. Conspiracy to Monopolize

Aquatherm also asserts that FPL conspired to monopolize the "pool heater aftermarket," by "conspiring with its "FPL Participating Contractors' and sellers of heat pump systems, who are in competition with Aquatherm...." *Aquatherm Br.* at 38.

In its amended complaint, Aquatherm alleges the following:

The Defendant [FPL] combined and conspired in a concerted action with manufacturers and sellers of electric pool heat pumps and pool contracting firms in its geographic area with a specific intent to achieve a monopoly in the pool heating market for the purpose of increased consumption of power by [FPL] customers who purchase these electric pool heat pumps in violation of 15 U.S.C.S. § 2.

1R.26 at 13. The district court correctly found that "[s]uch vague, conclusory allegations are insufficient to state a claim upon which relief can be granted." 971 F.Supp. at 1429.

In *Lombard's, Inc. v. Prince Mfg., Inc.,* 753 F.2d 974 (11th Cir.1985), this court affirmed the dismissal of § 1 conspiracy allegations which alleged only that "[Defendant], together and with [Defendant's] dealers and others at this time unknown to [Plaintiff], have attempted, and are now attempting, to prevent [Plaintiff] from making wholesale and mail order sales...." *Id.* at 975. The court stated: "Thus not only are no facts alleged to demonstrate the conspiracy but the specific participants of the conspiracy are not even identified. Such pleading is inadequate to give the defendant fair notice of [Plaintiff]'s claim." *Id.*

We find that the § 2 conspiracy claim offered by Aquatherm suffers from the same defect. Aquatherm identifies other conspirators only as "manufacturers and sellers of electric pool heat pumps," and specifies no fact in support of this allegation. Based on the facts presented, there is no showing of the requisite specific intent—on the part of FPL or any other party—to achieve a monopoly in the pool heater market.

4

Aquatherm essentially claims FPL entered an agreement with manufacturers and sellers of electric pool heat pumps in order to increase its sales of electric power. But " 'increasing sales' and 'increasing market share' are normal business goals, not forbidden by § 2 without other evidence of an intent to monopolize." *United States Steel Corp. v. Fortner Enterprises, Inc.,* 429 U.S. 610, 612 n. 1, 97 S.Ct. 861, 863 n. 1, 51 L.Ed.2d 80 (1977). Because there is no showing of concerted action deliberately entered into with the specific intent of achieving a monopoly in the pool-heater market,[4] Aquatherm's § 2 conspiracy claim cannot stand.

C. Monopoly Leveraging

Aquatherm also asserts a claim under § 2 of "monopoly leveraging," under which a monopolist "us[es] its monopoly power in one market to gain a competitive advantage in another." *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 275 (2d Cir.1979). As previously discussed, there is no showing the FPL in any way sought a competitive advantage in the pool-heater market, because FPL did not *compete* in the pool-heater market.

By stating a monopoly leveraging claim under these facts, Aquatherm in effect asks this court to extend *Berkey Photo* to a situation in which a monopolist projects its power into a market it not only does not seek to monopolize, but in which it does not even seek to compete. There is no support for such an extension in either the language of § 2 or the case law interpreting it.

III. Aquatherm's Section 1 Claims

---

[4]Equally fatal to Aquatherm's conspiracy allegation is the fact that no authority exists holding a defendant can conspire to monopolize a market in which it does not compete. The cases relied upon by Aquatherm offer no support under § 2. *See, e.g., Nash v. United States,* 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913) (Section 1 conspiracy claim alleged in restraint of trade is not the equivalent of a § 2 monopolization claim). The plaintiff can cite to *no* case in which at least one of the defendants charged with conspiracy to monopolize was not a competitor in the relevant market.

5

A. Conspiracy to Restrain Trade

Section 1 of the Sherman Act broadly prohibits "[e]very contract, combination ... or conspiracy, in restraint of trade or commerce...." A § 1 conspiracy to restrain trade does not need to allege the specific element of a conspiracy to monopolize, but must allege 1) an agreement to enter a conspiracy, 2) designed to achieve an unlawful objective. *See, e.g., United States Anchor Mfg., Inc. v. Rule Indus., Inc.,* 7 F.3d 986, 1001 (11th Cir.1993). It is fundamental that a plaintiff establish an *agreement* between two or more persons to restrain trade; unilateral conduct is not prohibited by § 1. *See Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984).

Aquatherm contends that FPL conspired to restrain competition "through fraud and deception and misuse of monopoly profits [and] unreasonably tilted the field of competition in favor of the substantially less energy-efficient heat pumps and thereby denied sales and profits to Aquatherm." *Aquatherm Br.* at 39.[5]

Even if Aquatherm's contentions are true, we find FPL's actions do not rise to the level of an actual restraint on competition. As the Supreme Court has stated:

> Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition or "purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.'

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 225, 113 S.Ct. 2578, 2589, 125 L.Ed.2d 168 (1993) (citation omitted). A plaintiff who alleges unfair competition must

---

[5]At oral argument, Aquatherm stated that the actual restraint on competition was FPL's customer mailings, which the plaintiff contends were "false representations to induce reliance thereon and give an unfair competitive advantage to [electric pool heaters]."

prove injury to *competition* in order to sustain a federal antitrust claim. *See Associated Radio Serv. Co. v. Page Airways, Inc.,* 624 F.2d 1342, 1350 (5th Cir.1980). In other words, as courts have repeatedly stated, "[t]he antitrust laws are intended to protect competition, not competitors." *Levine v. Central Florida Medical Affiliates, Inc.,* 72 F.3d 1538, 1551 (11th Cir.) (citing *Brown Shoe Co. v. United States,* 370 U.S. 294, 344, 82 S.Ct. 1502, 1534, 8 L.Ed.2d 510 (1962)), *cert. denied,* --- U.S. ----, 117 S.Ct. 75, 136 L.Ed.2d 34 (1996).

Aquatherm does not show, or even claim, that the actions by FPL harmed competition in the pool-heater market. Its only claim is FPL acted unfairly by disseminating false information, and this unfair competition in turn harmed Aquatherm's business. This claim of unfair competition is *not* sufficient to support a claim under § 1 or any other federal antitrust provision. As long as no restraint on competition occurred, there is no cause of action under § 1 resulting from FPL's promotion of electric pool heaters.

B. Tying Arrangements

Section 1 also may be violated by an invalid "tying arrangement," in which a seller exploits its control over a "tying product" to force the buyer to purchase a "tied product" that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 12, 104 S.Ct. 1551, 1558, 80 L.Ed.2d 2 (1984). "When such "forcing' is present, competition on the merits in the market for the tied item is restrained and the Sherman Act is violated." *Id.*

Therefore, in order for Aquatherm to state a valid § 1 claim under the theory of an illegal tying arrangement, it would have to show that FPL exploited its control over electrical power (the "tying product") in order to *force* pool owners to purchase PHPs (the "tied product") which they

7

either did not want or might have preferred to purchase elsewhere. The flaw in this argument is that the essential element of coercion on the part of the product seller is absent completely from the facts presented by Aquatherm. *Cf. Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Even if, as the plaintiff asserts, FPL disseminated false or misleading advertisements to pool owners and offered them incentives to buy a PHP, this does not rise to the level of coercion necessary to constitute an illegal tying arrangement.

C. Group Boycotts

Lastly, Aquatherm contends its allegations support a § 1 group boycott claim because "pool contractors—drawn by the enticements of FPL ...—refused to sell, or to make customer referrals to makers or sellers (including Aquatherm) of, solar heaters." *Aquatherm Br.* at 39. The plaintiff claims "a substantial number of pool contractors were, in effect, locked up by FPL." *Id.* Once again, we find that these allegations fall short of what is necessary to make out a valid antitrust claim.

A group boycott under § 1 involves the "pressuring [of] a party with whom one has a dispute by withholding, or enlisting others to withhold, patronage or services from the target." *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 541, 98 S.Ct. 2923, 2929, 57 L.Ed.2d 932 (1978). Group boycotts which have been deemed illegal per se "have generally involved joint efforts by a firm or firms to disadvantage competitors by "either directly denying or persuading or coercing suppliers or customers to deny relationships the competitors need in the competitive struggle.' " *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.,* 472 U.S. 284, 294, 105 S.Ct. 2613, 2619, 86 L.Ed.2d 202 (1985) (citation omitted).

8

As the district court correctly noted, Aquatherm claims only that FPL *recommended* the use of electric pool heaters;  there is no allegation or evidence that FPL refused to allow participating contractors to buy or sell solar pool heaters.  The act of offering "enticements" to contractors falls considerably short of "withholding, or enlisting others to withhold, patronage or services...." *St. Paul Fire & Marine,* 438 U.S. at 541, 98 S.Ct. at 2929.

Additionally, as with its § 2 conspiracy claims, Aquatherm has failed to identify any specific participants in the alleged group boycott conspiracy.  As stated earlier, under the law of this circuit "[s]uch pleading is inadequate to give the defendant fair notice of [Plaintiff]'s claim." *Lombard's,* 753 F.2d at 975.

## IV. Conclusion

Even if the plaintiff were given leave to amend its complaint, we conclude Aquatherm can prove no set of facts in support of its claims which would entitle it to relief under the federal antitrust laws.  For these reasons, we affirm the district court's dismissal of the amended complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Judgment AFFIRMED.