**ASHLEY MEADOWS FARM, INC., Plaintiff,**

v.

**AMERICAN HORSE SHOWS ASSOCIATION, INC., Defendant.**

**No. 82 Civ. 5691 (RWS).**

United States District Court, S.D. New York.

May 10, 1985.

---

Butler, Fitzgerald & Potter, P.C., New York City, for plaintiff; Thomas A. Butler, James M. Davis, James H. Neale, New York City, of counsel.

LeBoeuf, Lamb, Leiby & MacRae, New York City, for defendant; H. Richard Wachtel, Molly S. Boast, John T. Patterson, New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Ashley Meadows Farm, Inc. ("Ashley") has moved for summary judgment pursuant to Fed.R.Civ.P. 56 upon its claim for a permanent injunction under Section 1 of the Sherman Act and Section 16 of the Clayton Act, 15 U.S.C. §§ 1 and 26. Defendant American Horse Shows Association, Inc. ("AHSA") has moved to amend its answer to include a seventh defense based upon the Amateur Sports Act of 1978, 36 U.S.C. § 371 *et seq.* AHSA's motion was granted at oral argument, and Ashley's motion is denied.

### Prior Proceedings

Ashley and Ashley's president, Dolores Swann ("Swann"), brought this action against AHSA and Ira Finkelstein ("Finkelstein"), counsel to AHSA, alleging conspiracies to violate and actual violations of the antitrust laws. In an opinion of September 28, 1983 I granted Finkelstein's motion to dismiss but denied AHSA's similar motion. In an opinion of September 20, 1984 I granted AHSA's subsequent motion for summary judgment with respect Swann. Ashley has now moved for partial summary judgment, alleging that the mileage and protected date rules violate 15 U.S.C. §§ 1 and 26.

### Facts

The facts as alleged with respect to AHSA's structure and role in the horse showing community, Ashley, and the operation of AHSA's "mileage" and "protected" date rules are set forth with sufficient specificity in the September 28, 1983 and September 20, 1984 opinions, 593 F.Supp. 1184. Familiarity with these opinions is assumed.

### Discussion

The parties agree that *NCAA v. Board of Regents*, — U.S. —, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984) ("NCAA") is dispositive of this case. Two issues must be resolved in light of the Supreme Court's reasoning in *NCAA:* should the *per se* rule

be applied to AHSA's mileage and protected date rules, and, if not, are there material questions of fact which prevent granting summary judgment under a rule of reason analysis.

**The Per Se Rule**

In *NCAA* the Supreme Court evaluated a scheme pursuant to which the television committee of the NCAA was granted sole authority to negotiate all rights to televise member college's football games. The scheme limited both the total quantity of televised intercollegiate football and the number of games that any one team could televise. Member schools were permitted to televise games only in accordance with the approved scheme, and when certain member schools began to negotiate additional sales of television rights, the NCAA threatened disciplinary action.

After a full trial, the district court found the scheme and its enforcement to constitute a "classic cartel," and it found the plan to be both *per se* price fixing and a *per se* group boycott in violation of Section One of the Sherman Act. *Board of Regents v. NCAA*, 546 F.Supp. 1276, 1300–1313 (W.D.Okl.1982). The Ninth Circuit affirmed on the ground that the plan constituted *per se* price fixing. *Bd. of Reg. of U. of Okl. v. NCAA*, 707 F.2d 1147 (10th Cir. 1983).

The Supreme Court rejected the lower court's application of the *per se* rule, invoking, in its stead, the rule of reason:

> There can be no doubt that the challenged practices of the NCAA constitute a "restraint of trade" in the sense that they limit members' freedom to negotiate and enter into their own television contracts.

> It is also undeniable that these practices share characteristics of restraints we have previously held unreasonable.... By participating in an association which prevents member institutions from competing against each other on the basis of price or kind of television rights that can be offered to broadcasters, the NCAA

member institutions have created a horizontal restraint—an agreement among competitors on the way in which they will compete with one another. A restraint of this type has often been held to be unreasonable as a matter of law. Because it places a ceiling on the number of games member institutions may televise, the horizontal agreement places an artificial limit on the quantity of televised football that is available to broadcasters and consumers. By restraining the quantity of television rights available for sale, the challenged practices create a limitation on output; our cases have held that such limitations are unreasonable restraints of trade....

> Horizontal price-fixing and output limitation are ordinarily condemned as a matter of law under an "illegal per se" approach because the probability that these practices are anti-competitive is so high; ... Nevertheless, we have decided that it would be inappropriate to apply the per se rule to this case. [W]hat is critical is that this case involves an industry in which horizontal restraints on competition are essential if the product is to be available at all.

> What the NCAA and its member institutions market in this case is competition itself—contests between competing institutions. Of course, this would be completely ineffective if there were no rules on which the competitors agreed to create and define the competition to be marketed.... And the integrity of the "product" cannot be preserved except by mutual agreement; if an institution adopted such restrictions unilaterally, its effectiveness as a competitor on the playing field might soon be destroyed. Thus, the NCAA plays a vital role in enabling college football to preserve its character, and as a result enables a product to be marketed which might otherwise be unavailable. In performing this role, its actions widen consumer choice—not only the choices available to sports fans but also those available to athletes—and

hence can be viewed as procompetitive.... Thus, despite the fact that this case involves restraints on the ability of member institutions to compete in terms of price and output, a fair evaluation of their of their competitive character requires consideration of the NCAA's justifications for the restraints.

■ The Court reasoned in *NCAA* that where cooperation and rule creation among members of a sports organization are necessary to insure the existence of a product defined as the marketing of high caliber competition then the application of the *per se* rule may be inappropriate. This case is analogous. What the AHSA markets is a system of horse show certification and recognition designed to produce uniform grading and ranking of horses. Consumers are both the exhibitors of horses and the viewing public. Consequently, just as the NCAA can proffer potentially anticompetitive rules outside the scrutiny of the *per se* rule in order to ensure the integrity of college football, so too can the AHSA create a framework of rules to guarantee the continued quality of horse competitions. Because AHSA claims that its market restrictions perform a pro competitive function through their preservation of the character and caliber of the sport, a factual issue has been presented which makes the application of the *per se* rules inappropriate. *See* the following cases, all cited approvingly in *NCAA*, note 24. *Brenner v. World Boxing Council*, 675 F.2d 445 (2d Cir.1982); *North American Soccer v. National Football League*, 670 F.2d 1249 (2d Cir.1982); *Hatley v. American Quarter Horse Ass'n.*, 552 F.2d 646 (5th Cir.1977); *Justice v. NCAA*, 577 F.Supp. 356 (D.D.C. 1983); *Cooney v. American Horse Shows Ass'n.*, 495 F.Supp. 424 (S.D.N.Y.1980). The mileage and protected date rules, because they might exert regulatory pressures akin to those acknowledged by the Court in *NCAA*, require a more searching analysis than that of the *per se* test.

**Rule of Reason**

■ Under a rule of reason analysis the trier of fact must "form a judgment about the competitive significance of the restraint." *NCAA*, — U.S. at —, 104 S.Ct. at 2962, quoting *National Society of Professional Engineers v. United States*, 435 U.S. 679, 692, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978). In *North American Soccer* the Second Circuit defined the factors that must be weighed in rule of reason analysis:

The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its conditions before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts. This is not because good intention will save an otherwise objectionable regulation or the reverse; but because knowledge of intent may help the court to interpret facts and to predict consequences.

670 F.2d at 1259.

■ The multiplicity of factors that must be balanced under this test makes this task particularly unsuited to resolution on a motion for summary judgment in the face of AHSA's assertion that its mileage and protected date rules are reasonable and necessary to maintain the integrity or character of the sport and the caliber, integrity, and uniformity of competition. *See Brenner v. World Boxing Council, supra*, at 455; *Justice v. NCAA, supra*, at 382 n. 17. Whether these claims can be supported, and whether AHSA can demonstrate that the rules are sufficiently akin to "the size of the field, the number of players on a team" *NCAA*, — U.S. at —, 104 S.Ct. at 2961, such that the restraint on competition is reasonable, awaits a determination at trial. The rule of reason, however, "does

not support a defense based on the assumption that competition itself is unreasonable;" *NCAA* at ——, 104 S.Ct. at 2969, *quoting Professional Engineers, supra,* 435 U.S. at 696, 98 S.Ct. at 1367. The undisputed restraint on trade places on AHSA "a heavy burden of establishing an affirmative defense which competitively justifies this apparent deviation from the operations of the free market." *NCAA,* —— U.S. at ——, 104 S.Ct. at 2967.

## Conclusion

Under *NCAA,* in my view, the *per se* rule should not be applied on the facts of this case. Further, the balancing of the factors to be applied under the rule of reason requires a factual resolution inappropriate to summary judgment when conflicting testimony is urged with respect to the purpose and effect of the restraint. The motion for summary judgment is therefore denied. All discovery must be completed by July 3, 1985 and a joint pretrial order submitted by July 10, 1985.

IT IS SO ORDERED.