JES PROPERTIES, INC. d/b/a Cypress Trails Farm, a Florida corporation, and Michael W. Gallagher, Plaintiffs,

v.

USA EQUESTRIAN, INC. (formerly the American Horse Show Association), Dave Burton a/k/a/ Dave Burton, Sr. a/k/a Dave E. Burton a/k/a Dave E. Burton Sr., Burton and Sons, Inc., David Burton a/k/a David Burton, Jr., a/ka David E. Burton a/k/a David E. Burton, Jr., Littlewood Fences, Inc., Bob Bell, Classic Company, Ltd., and Kernan Hodges a/k/a Mrs. George H. Hodges, Jr. Defendants.

No. 8:02–CV–1585–T–24MAP.

United States District Court,
M.D. Florida,
Tampa Division.

March 28, 2003.

Robin S. Trupp, Robin S. Trupp, P.A., Tampa, FL, for JES Properties, Inc., a Florida corporation dba Cypress Trails Farm, Michael W. Gallagher, plaintiffs.

Chris S. Coutroulis, David Matthew Allen, Carlton Fields, P.A., Tampa, FL, Ira A. Finkelstein, Tenzer Greenblatt LLP, New York City, Edward C. Larose, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, Brent G. Siegel, Brent G. Siegel, P.A., Gainesville, FL, Lawrence E. Richter, Jr., David K. Haller, Richter & Holler, LLC, Mount Pleasant, SC, Paul M. Harden, Law Office of Paul M. Harden, Jacksonville, FL, David Thomas Knight, Hill, Ward & Henderson, P.A., Tampa, FL, for USA Equestrian, Inc. fka American Horse Show Assoc., Dave Burton aka Dave Burton, Sr. aka Dave E. Burton aka Dave E. Burton, Sr., Burton & Sons, Inc., David Burton aka David Burton, Jr. aka David E. Burton aka David E. Burton, Jr., Littlewood Fences, Inc., Bob Bell, Classic Co., Ltd., Kernan Hodges aka George H. Hodges, Jr., defendants.

### ORDER

BUCKLEW, District Judge.

This cause comes before the Court for consideration of the following motions: Defendants', David E. Burton, Sr., David E. Burton, Jr., Burton and Sons, Inc. and Littlewood Fences, Inc. (collectively "the Burton Defendants"), Motion to Dismiss (Doc. No. 16, filed October 25, 2002); Defendant USA Equestrian, Inc.'s (the "Federation") Motion to Dismiss (Doc. No. 17, filed October 25, 2002); Defendants', Bob Bell and Classic Company Ltd. (collectively "Bell"), Motion to Dismiss and/or Motion for More Definite Statement and Defendant's, Kernan Hodges, a/k/a Mrs. George H. Hodges, Jr. ("Hodges") Motion to Dismiss (Doc. No. 21, filed October 28, 2002). Plaintiffs filed a Request for Oral Argument and Memorandum in Opposition to Defendants' Motions to Dismiss on December 6, 2002 (Doc. No. 24)(hereinafter "Response to Motions. to Dismiss"). In concluding their Response to Motions to Dismiss, Plaintiffs request leave to amend Count III to assert their claim under section 16 of the Clayton Act, citing a scrivener's error. Plaintiffs did not attach a copy of the proposed Amended Complaint to their Response to Motions to Dismiss.

In reply to Plaintiffs' Response to Motions to Dismiss, Defendant USA Equestrian, Inc. (the "Federation") filed a Motion for Leave to File Reply Brief in Support of Motion to Dismiss (Doc. No. 26, filed December 18, 2002). The Burton Defendants filed Joinder in USA Equestrian, Inc.'s Motion (Doc. 27, filed December 19, 2002). Plaintiffs filed a Response to Motions to File Reply Brief (Doc. 28, filed December 23, 2002). Subsequently, Defendants Bell filed Joinder in USA Equestrian, Inc.'s Motion (Doc. 29, filed December 30, 2002). At the Preliminary Pretrial Conference held January 30, 2003, the Court issued an oral order granting Defendants' Motion for Leave to File Reply Brief in Support of Motion to Dismiss.

### I. Background

Plaintiff JES Properties, Inc. d/b/a/ Cypress Trails Farm (hereinafter "Cypress Trails") is a Florida corporation which owns real property in Hillsborough County, Florida where it holds horse shows. See Complaint ¶¶ 3 and 38. Plaintiff Michael W. Gallagher ("Gallagher") is a natural person residing in Florida who promotes horse shows. See Complaint ¶¶ 4 and 39.

Defendant, USA Equestrian, Inc. (the "Federation") is a New York not-for-profit corporation that has more than 80,000 members ("Members") and annually recognizes more than 2,800 horse shows nationwide ("Recognized Horse Shows"). The Federation governs all aspects of Recognized Horse Shows, including educating and licensing all judges, stewards, and technical delegates who officiate at Recognized Horse Shows. On an annual basis, the Federation provides its Members a Competition calendar which lists the Federation's Recognized Horse Shows for the year. *See* Complaint ¶¶ 5 and 6. The Federation writes and enforces its national rules ("Federation Rules") which govern the breeds and disciplines of Recognized Horse Shows. The Federation Rules may only be used by Federation Recognized Horse Shows, or by a non-recognized horse show with the Federation's prior written permission.

Chapter IV, entitled "Competition" of Rule II of the Federation Rules ("Competition Rules") sets forth how a Recognized Horse Show is established. Article 208 of the Competition Rules sets forth the privileges of being a Recognized Horse Show ("Horse Show Privileges"). Article 210 of the Competition Rules entitled "General" sets forth how one makes an application to become a Recognized Horse Show. Article 212 of the Competition Rules entitled "Procedures" sets forth the procedures a party must follow to secure dates to hold a Recognized Horse Show. *See* Complaint ¶¶ 29, 31, 31 [1] and 32.

Particularly at issue in the present case is the Federation's limitations on the permissible distances between different classifications of Recognized Horse Shows. Article 214 of the Competition Rules entitled "Mileage" sets forth the Federation's mileage limitations ("Mileage Rule"). The Mileage Rule provides that in the States of Maine, New Hampshire, Vermont, Connecticut, Rhode Island, New Jersey, New York and Pennsylvania, it is not permissible for two "A" rated hunter/jumper Recognized Horse Shows to be held on the same dates within 125 miles of each other unless permission is given by the first horse show to become a Recognized Horse Show to the second horse show wishing to become a Recognized Horse Show. The Mileage Rule provides that in all other States, "A" rated hunter/jumper horse shows must be held at least 250 miles apart absent obtaining a waiver by the first horse show to become a Recognized Horse Show to the second horse show wishing to become a Recognized Horse Show. *See* Complaint ¶¶ 33, 34 and 35. Certain events are exempted from the Mileage Rule. *See* Complaint ¶ 36.

The Burton Defendants put on or manage "A" rated hunter and jumper Recognized Horse Shows in the State of Florida. *See* Complaint ¶¶ 9, 10, 11 and 12. Defendant, the Classic Company, Ltd. is in the business of managing and producing "A" rated hunter and jumper Recognized Horse Shows in the State of Florida. *See* Complaint ¶ 13. Defendant Bob Bell is a natural person who acts as a manager and/or promoter of "A" rated hunter and jumper Recognized Horse Shows in the State of Florida. *See* Complaint ¶ 14. Defendant Hodges is a natural person who acts as a promoter of "A" rated hunter and jumper Recognized Horse Shows in the State of Florida. *See* Complaint ¶ 15.

Plaintiffs state that it was their intent to promote "A" rated hunter and jumper Recognized Horse Shows at which different exhibitors can compete. *See* Complaint ¶ 39. The Plaintiffs attempted to secure dates from the Federation to hold "A" rated hunter and jumper Recognized Horse Shows on certain dates and at cer-

1. The Court notes that the Complaint paragraph numbering repeats paragraph 31.

tain locations. *See* Complaint ¶ 40. During 2000, 2001, 2002 and 2003, Plaintiff Cypress Trails applied for certain dates and locations to hold "A" rated hunter and jumper Recognized Horse Shows. The Federation denied certain dates and locations which Cypress Trails applied for on the basis that the Federation had already approved another promoter those dates for locations within 250 miles of the locations for which Cypress Trails had applied (the "Cypress Trails Refusal Dates"). *See* Complaint ¶ 41. Likewise, during 2000, 2001, 2002 and 2003, Plaintiff Gallagher applied for certain dates and locations to hold "A" rated hunter and jumper Recognized Horse Shows which would be recognized by the Federation. The Federation denied certain dates and locations which Gallagher applied for on the basis that the Federation had already approved another promoter for those dates for locations within 250 miles of the location which Gallagher had applied (the "Gallagher Refusal Dates")[2]. *See* Complaint ¶ 42. Plaintiffs concede that the Federation approved some of the dates and locations for which Cypress Trails and Gallagher applied.

Plaintiff Cypress Trails attempted to seek written consent from the Burton Defendants, the Defendants Bell and Defendant Hodges to hold its shows within 250 miles of their previously approved shows but the Mileage Rule was not waived. *See* Complaint ¶ 45.

In their Complaint, Plaintiffs assert that the Mileage Rule is one of the most destructive forces in the horse show world today because it gives the Federation, horse show promoters and managers a virtual monopoly over the ability to hold "A" rated hunter and jumper Recognized Horse Shows. Plaintiffs assert that the Mileage Rule is a restraint of trade and imposes an unreasonable restraint on competition. *See* Complaint ¶ 61. Plaintiffs further allege that there is no logical explanation to support the Federation maintaining different mileage distance requirements in different states. Plaintiffs assert that with use of the Mileage Rule, the Federation, the Burton Defendants, the Defendants Bell and Defendant Hodges have prevented Plaintiffs from entering into the marketplace of conducting "A" rated hunter and jumper Recognized Horse Shows. *See* Complaint ¶¶ 46 and 47. Plaintiffs further allege that Defendants, and other unnamed parties, possess a dominant market power to exclude competitors conducting "A" rated hunter and jumper Recognized Horse Shows. *See* Complaint ¶¶ 48 and 62. Plaintiffs state that all of Defendants acted as part of a common scheme to violate the antitrust laws which have an adverse effect on competition. *See* Complaint ¶ 50. More specifically, Plaintiffs assert that the Mileage Rule prohibits new promoters like Cypress Trails and Gallagher from entering the marketplace and that Cypress Trails and Gallagher are both the target against which the antitrust activity is directed. *See* Complaint ¶¶ 51 and 53.

Defendants seek to dismiss Plaintiffs' Complaint in its entirety. Count I raises claims of unreasonable restraint of trade under section 1 of the Sherman Act. Count II raises claims of monopolization and attempted monopolization under section 2 of the Sherman Act. Count III, as pled, raises claims of conduct, practices and activities which have the likelihood of substantially lessening competition, and did in fact substantially lessen competition under section 7 of the Clayton Act. In its Response

---

**2.** The Court notes that an "A" rated hunter and jumper Recognized Horse Show apparently promoted by Plaintiff Cypress Trails was the basis of the Federation's denial of Plaintiff Gallagher's proposed horse show dates for 12/14—12/16/01 in Belleview, Florida.

to Motions to Dismiss, citing a scrivener's error, Plaintiffs request leave to amend Count III to assert their claim under section 16 of the Clayton Act.

## II. *Standard of Review for a Motion to Dismiss*

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. *See Murphy v. Federal Deposit Ins. Corp.,* 208 F.3d 959, 962 (11th Cir.2000)(citing *Kirby v. Siegelman,* 195 F.3d 1285, 1289 (11th Cir.1999)). A complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." *Id.* at 47, 78 S.Ct. 99. All that is required is "a short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *See Jackam v. Hospital Corp. of Am. Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986). The Federal Rules of Civil Procedure have adopted this "simplified pleading" approach because of "the liberal opportunity for discovery and other pretrial procedures ... to disclose more precisely the basis of both claim and defense." *Conley,* 355 U.S. at 48, 78 S.Ct. 99. The purpose of notice pleading is to reach a decision on the merits and to avoid turning pleading into "a game of skill in which one misstep by counsel may be decisive to the outcome." *Id.*

"To satisfy the requirements of notice pleading in an antitrust complaint, 'enough data must be pleaded so that each element of the alleged antitrust violation can be properly identified.'" *Boczar v. Manatee Hospitals & Health Systems, Inc.,* 731 F.Supp. 1042, 1045 (M.D.Fla.1990) (*Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp., S.A.,* 711 F.2d 989, 995 (11th Cir. 1983)). Rule 12(b)(6) dismissals are particularly disfavored in fact-intensive antitrust cases. *See Covad Communications Company v. BellSouth Corporation,* 299 F.3d 1272, 1279 (11th Cir.2002).

## III. Discussion

Collectively, Defendants set forth no less than five different grounds upon which their Motions to Dismiss should be granted. Specifically, Defendants seek dismissal on the following grounds: (1) Plaintiff Gallagher may not pursue an antitrust claim because he fails to allege that he was denied a "Mileage Rule" waiver; (2) Plaintiffs cannot proceed under section 7 of the Clayton Act as this case does not involve mergers; (3) the Complaint fails to state a cause of action upon which relief can be granted under section 1 of the Sherman Act [3]; (4) the Complaint fails to state a cause of action upon which relief can be granted under section 2 of the Sherman Act [4] and (5) the Court lacks subject matter jurisdiction. The Court will address subject matter jurisdiction in its discussion of section 1 of the Sherman Act.

---

**3.** The Court notes that while all of the Defendants raise this basis in their Motions to Dismiss, each Motion to Dismiss differs slightly as to the specific element of Plaintiffs' claim which is defective.

**4.** Again, the Court again notes that while all of the Defendants raise this basis in their Motions to Dismiss, each Motion to Dismiss differs slightly as to the specific element of Plaintiffs' claim which is defective.

### 1. Plaintiff Gallagher

The Burton Defendants assert that Plaintiff Gallagher's claim against them is not ripe in that the Complaint fails to allege that he requested and was refused a waiver of the "Mileage Rule" by any of the Burton Defendants. Specifically, it is the Burton Defendants' position that Plaintiff Gallagher alleges only that USA Equestrian denied his applications for certain "A" rated hunter/jumper show dates and locations. *See* Complaint ¶ ¶ 40, 42, Exhibit D. The Burton Defendants further state that having failed to comply with USA Equestrian's procedures regarding obtaining a waiver of the "Mileage Rule" requirements by a previously-recognized promoter of an "A" rated hunter/jumper recognized show, Plaintiff Gallagher cannot proceed against any of the Burton Defendants. Similarly, Defendant Hodges asserts that Gallagher has made no allegations of conduct against Hodges which could give rise to an antitrust claim, and therefore, all of his claims as to Defendant Hodges should be dismissed.

In Plaintiffs' Response to Motions to Dismiss, Plaintiffs fail to address this ground for dismissal raised by the Burton Defendants and Defendant Hodges. Since there is insufficient information in the Complaint with respect to whether Plaintiff Gallagher attempted to obtain a waiver of the Mileage Rule, the Court grants the Burton Defendants and Defendant Hodges Motion to Dismiss as to Plaintiff Gallagher.

### 2. Section 7 of the Clayton Act

■ In Count III of the Complaint as filed, Plaintiffs allege a violation of section 7 of the Clayton Act, 15 U.S.C. § 18. In their Motions to Dismiss all Defendants move to dismiss Count III of the Complaint referring to the fact that section 7 of the Clayton Act prohibits anti-competitive mergers and acquisitions. More specifically, the Burton Defendants, citing *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 485, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), state that "Section 7 prohibits those merger/acquisitions whose effect 'may be to substantially lessen competition, or to tend to create a monopoly.' " All the Defendants correctly state that the Complaint is devoid of any allegations relating to merger or acquisition activities.

In Plaintiffs' Response to Motions to Dismiss, Plaintiffs state that as a result of a scrivener's error the incorrect section was cited and the section cited should have been section 16 of the Clayton Act. The Plaintiffs specifically request the Court permit the Plaintiffs to assert their claim under section 16 of the Clayton Act.

Defendant USA Equestrian, Inc. (the "Federation") filed a Reply Brief in Support of Motion to Dismiss (Exhibit A to Document 26) addressing Plaintiffs' proposed section 16 claim. The Burton Defendants' joined in the Federation's Reply Brief (Doc. 27). The Defendants Bell subsequently joined in the Federation's Reply Brief (Doc. 29).

The Federation argues that Plaintiffs' request to replead Count III as a separate claim should be denied. First, the Federation argues that in the event the Court dismisses Plaintiffs' substantive law claims under the Sherman Act, Plaintiffs' proposed Count III would have to be dismissed as well. Second, the Federation argues that Plaintiffs seek to invoke an improper pleading practice since section 16 of the Clayton Act provides an injunctive remedy and therefore should be an element of Plaintiffs' prayer for relief and not a separately plead claim. The Court agrees. The Court finds Plaintiffs must plead their claim under section 16 of the Clayton Act as part of their prayer for relief.[5]

**5.** The Court directs Plaintiffs' attention to *American Jurisprudence (AmJur) Pleading &*

### 3. Section 1 of the Sherman Act

Section 1 of the Sherman Act provides, in pertinent part, that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1. Broadly speaking, irrespective of the type of activity challenged, certain elements must be pleaded and established to prove a violation of section 1:(1) that a conspiracy exists between two or more entities and (2) that the conspiracy unreasonably restrains trade. *See Boczar v. Manatee Hospitals & Health Systems, Inc.,* 731 F.Supp. 1042 (M.D.Fla.1990); *see also Weight–Rite Golf Corporation, et al. v. United States Golf Association,* 766 F.Supp. 1104 (M.D.Fla. 1991)(on motion for summary judgment); *Tucci v. Smoothie King Franchises, Inc.,* 215 F.Supp.2d 1295 (M.D.Fla.2002).[6] However, as discussed below, the Court finds that Plaintiffs have not plead allegations that support each of the elements of a section 1 violation of the Sherman Act.

#### a. Contract, Combination or Conspiracy

All Defendants claim that Plaintiffs fail to plead a contract, combination, or conspiracy under section 1 of the Sherman Act. The Court concurs. Section 1 of the Sherman Act does not proscribe independent action by a single entity, regardless of its purpose or effect on competition. Section 1 of the Sherman Act does not prohibit independent business decisions but only prohibits concerted action and, thus, requires some agreement express or implied between two or more persons.

See *Moecker v. Honeywell International, Inc.,* 144 F.Supp.2d 1291, 1300 (M.D.Fla. 2001) citing *Monsanto Co. v. Spray–Rite Serv. Corp.,* 465 U.S. 752, 761, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). Unilateral conduct is not illegal under a restraint of trade provision. *See Levine v. Central Florida Medical Affiliates,* 72 F.3d 1538 (11th Cir.1996). Because demonstrating concerted action is vital to establishing liability under section 1, vague allegations of concerted action are vulnerable to dismissal.

To state a cause of action for civil conspiracy, a plaintiff must allege: (1) agreement between two or more parties to achieve an illegal objective, (2) overt act in furtherance of that illegal objective, and (3) resulting injury. *See Tucci v. Smoothie King Franchises, Inc.,* 215 F.Supp.2d 1295, 1300 (M.D.Fla.2002)(citing *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.,* 140 F.3d 898 (11th Cir.1998)). It is only in rare cases that a plaintiff can establish a conspiracy by showing an express agreement. Most conspiracies are inferred from the behavior of the alleged conspirators. *See Moecker v. Honeywell International, Inc.,* 144 F.Supp.2d 1291, 1301(M.D.Fla.2001)(citing *DeLong Equip., Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499, 1515 (11th Cir.1989)). There must be evidence that tends to exclude the possibility that the parties were acting independently. There must be direct or circumstantial evidence that reasonably tends to prove that the parties had a conscious commitment to a common scheme designed to achieve an

*Practice Forms.* 70+ vols. Rochester, NY: Lawyers Cooperative Publishing Co., 1966—.

**6.** There is slight variation within the Middle District of Florida as to how the elements of a claim under section 1 of the Sherman Act should be articulated. *See Golta, Inc. v.*

*Greater Orlando Aviation Authority,* 761 F.Supp. 778 (M.D.Fla.1991)(requiring that the unreasonable restraint of trade causes actual damage) and *Moecker v. Honeywell International, Inc.,* 144 F.Supp.2d 1291 (M.D.Fla.2001)(requiring that the plaintiff was damaged).

unlawful objective. *Monsanto Co.*, 465 U.S. at 764, 104 S.Ct. 1464.

Plaintiffs' Complaint provides "[a]ll of the Defendants acted as a part of a common scheme to violate the antitrust laws which have an adverse effect on competition." *See* Complaint ¶ 50. The Complaint does not state with any degree of specificity the Defendants' alleged concerted conspiratorial conduct nor how the Mileage Rule relates to Plaintiffs' section 1 claim. Nowhere does the Complaint even allege that Defendants were conscious of each other's conduct nor that this awareness was an element in their decision-making process.

The present claim states only a conclusory allegation that there was a conspiracy between the Defendants. A conclusory allegation of conspiracy to restrain trade will not survive a motion to dismiss. *See Lombard's Inc. v. Prince Manufacturing, Inc.*, 753 F.2d 974, 975 (11th Cir.1985)(citing *Larry R. George Sales Company v. Cool Attic Corp.*, 587 F.2d 266, 273–74 (5th Cir. 1979)). As pled there are no facts to support an inference that there were concerted activities between or involving Defendants with respect to the adoption or implementation of the "Mileage Rule."

### b. Unreasonable Restraint of Trade

The Federation also argues that Count I should be dismissed because Plaintiffs fail to allege an injury to competition as a whole in a properly defined relevant market—as opposed to an injury to Plaintiffs alone. Additionally, the Federation argues that Count I fails to allege whether Plaintiffs are traveling under a *per se* theory or rule of reason. The Federation states that "to the extent plaintiffs may attempt to travel under a *per se* theory, dismissal is required as a matter of law".

*See Hatley v. American Quarter Horse, Ass'n*, 552 F.2d 646 (5th Cir.1977); *Cooney v. American Horse Shows Association, Inc.*, 495 F.Supp. 424, 431 (S.D.N.Y.1980); *Ashley Meadows Farm, Inc. v. American Horse Shows Association, Inc.*, 609 F.Supp. 677 (S.D.N.Y.1985).

Not every agreement that restrains competition will violate the Sherman Act. The Supreme Court has determined that section 1 prohibits only those agreements that *unreasonably* restrain competition. See *Levine v. Central Florida Medical Affiliates et al.*, 72 F.3d 1538, 1545 (11th Cir.1996)(citing *Standard Oil Co. v. United States*, 221 U.S. 1, 58 –64, 31 S.Ct. 502, 515–517, 55 L.Ed. 619 (1911)). Two different methods of analyses are used to determine whether the conspiracy unreasonably restrains trade: the rule of reason and the *per se* rule. *See Boczar v. Manatee Hospitals & Health Systems, Inc.*, 731 F.Supp. 1042, 1045 (M.D.Fla.1990); *see also Weight–Rite Golf Corporation v. United States Golf Association*, 766 F.Supp. 1104, 1108 (M.D.Fla.1991)(plaintiff must show that challenged conduct will substantially restrain competition in relevant product market).

### 1. Per Se Violations

Per se illegality is limited to four categories of trade restraints: (1) horizontal and vertical price fixing; (2) horizontal market divisions; (3) group boycotts or concerted refusals to deal; and (4) tying arrangements. *See Moecker v. Honeywell International, Inc.*, 144 F.Supp.2d 1291, 1301 (M.D.Fla.2001)(citing *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1567 (11th Cir.1991)). The Court finds that Plaintiffs have failed to plead a *per se* violation of the Sherman Act and therefore a "rule of reason" analysis would be triggered.[7] The presumption in cases brought

---

**7.** The Court notes, however, that in Plaintiffs' Response to Motions to Dismiss, Plaintiffs reference that Defendants "entered into an agreement to divide the market among themselves" and references that market division agreements are per se illegal. Therefore, it is

under section 1 of the Sherman Act is that the rule of reason standard applies. *Moecker*, 144 F.Supp.2d at 1301.

### 2. Rule of Reason

■ Using the rule of reason analysis for a claim under the restraint of trade section of the Sherman Act, a plaintiff must allege that defendants' conduct had an impact upon competition in his particular profession, not just upon his business, and that the alleged restraint on trade was reasonably calculated to prejudice public interest. *See Tucci v. Smoothie King Franchises, Inc.*, 215 F.Supp.2d 1295, 1300 (M.D.Fla.2002)(citing *Boczar v. Manatee Hospitals & Health Systems, Inc.*, 731 F.Supp. 1042, 1046 (M.D.Fla.1990)(quoting *Feldman v. Jackson Memorial Hospital*, 571 F.Supp. 1000, 1008 (S.D.Fla.1983))); *see also Retina Associates, P.A. v. Southern Baptist Hospital of Florida*, 105 F.3d 1376 (11th Cir.1997)((on summary judgment) requires proof that defendant's conduct had anticompetitive effect in relevant market, either by establishing actual anticompetitive effect or potential for genuine anticompetitive effect in defined geographic and product markets, and that no pro-competitive rationale would justify conduct).

Showing injury to oneself as a competitor is insufficient to show that challenged conduct will substantially restrain competition in the relevant product market. *See Weight–Rite*, 766 F.Supp. at 1110. The purpose of the Sherman Antitrust Act is to protect competition, not individual competitors. *Boczar*, 731 F.Supp. at 1045. *See Brown Shoe Co. v. U.S.*, 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). Plaintiffs fail to fully plead how the Mileage Rule tends or is reasonably calculated to prejudice the public interest and how it impacts competition among promoters of

"A" rated hunter and jumper Recognized Horse Shows.

To sustain a claim under the rule of reason, the plaintiff must show: (1) that the defendant's conduct has an anti-competitive effect in the relevant market and (2) that there is no pro-competitive justification for the conduct. *See Moecker*, 144 F.Supp.2d at 1301 (citing *Levine v. Central Florida Medical Affiliates et al.*, 72 F.3d 1538, 1551 (11th Cir.1996)). To satisfy these criteria, plaintiff must first define and prove a relevant market, which consists of both relevant products and geographic markets. *See Moecker*, 144 F.Supp.2d at 1302; *see also All Care Nursing Services, Inc. v. High Tech Staffing Services, Inc.*, 135 F.3d 740, 749 (11th Cir.1998). Under section 1 of the Sherman Act, antitrust plaintiffs have burden of defining relevant market. *See Queen City Pizza v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3rd Cir.1997), *cert. denied*, 523 U.S. 1059, 118 S.Ct. 1385, 140 L.Ed.2d 645 (1998).

Plaintiffs' argue that the relevant geographic market can be construed as the distance of 250 miles from the "A" rated hunter and jumper Recognized Horse Shows put on by The Burtons, Bob Bell, Classic and Hodges on the specific dates that the Plaintiffs' were denied approval by the Federation. Plaintiff alternatively argues that the relevant geographic market could also be considered as 250 miles from the locations where Cypress Trails and Gallagher have applied to hold "A" rated hunter and jumper Recognized Horse Shows. Plaintiffs further argue that the relevant product market is the producing and holding of "A" rated hunter and jumper Recognized Horse Shows.

While in most antitrust cases, proper market definition can be determined only

unclear whether Plaintiffs did intend to plead   a *per se* violation of the Sherman Act.

after factual inquiry into commercial realities faced by consumers, there is not per se prohibition against dismissal of antitrust claims for failure to plead relevant market. *See Queen City*, 124 F.3d at 436.[8] Where an antitrust plaintiff fails to define its proposed relevant market with reference to rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, relevant market is legally insufficient and a motion to dismiss may be granted. *Id.* Further, the geographic market in an antitrust action is defined by considering commercial realities faced by consumers; it includes the geographic area in which consumers can practically seek alternative sources of the product, and it can be defined as market area in which seller operates. *See Double D Spotting Service, Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir.1998)(citing *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961)).

The Court finds that Plaintiffs did not properly define a relevant market as required under a section 1 of the Sherman Act rule of reason analysis. Specifically, Plaintiffs do not provide rationale why the relevant product market should be defined as "A" rated hunter and jumper Recognized Horse Shows. Plaintiffs fail to allege that "A" rated hunter and jumper Recognized Horse Shows are unique or explain why "A" rated hunter and jumper Recognized Horse Shows are not part of the larger market for horse competitions.[9] Further, Plaintiffs fail to delineate why the geographic market should be limited solely to the State of Florida and not the South/Southeast or even the United States as a whole.

### c. Affects Interstate Commerce/Subject Matter Jurisdiction

Although not always enunciated as a required element of a section 1 claim in the Eleventh Circuit, another statutory element of a claim under this section is that the challenged agreement be in "restraint of trade or commerce among the several States." 15 U.S.C. § 1. Defendants Bell contend that the Court lacks subject matter jurisdiction in the instant action because the relevant aspect of interstate commerce is not identified. Specifically, Defendants Bell argue that the requirement that a restraint on interstate commerce be present constitutes a jurisdictional prerequisite for the assertion of federal jurisdiction.

Premature dismissals of antitrust claims for lack of subject matter jurisdiction are not favored 'where the factual and jurisdictional issues are completely intermeshed . . . .' *Chatham Condominium Ass'ns v. Century Village, Inc.*, 597 F.2d 1002, 1011 (5th Cir.1979) (citations omitted); *see also Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 733 (11th Cir.1982) (citations omitted). In such cases, the jurisdictional issues should be deferred to the merits. *See Chatham Condominium Ass'ns*, 597 F.2d at 1011. Therefore, the Court finds

---

**8.** The Court notes that while Eleventh Circuit law states that relevant market is a question of fact, the specific issue of whether there is a per se prohibition against dismissal of antitrust claims for failure to plead relevant market under section 1 of the Sherman Act has not been addressed. *See also Griffiths v. Blue Cross and Blue Shield of Alabama*, 147 F.Supp.2d 1203, 1213 (N.D.Ala.2001).

**9.** The Court notes that there are several disciplines for which horse show competitions are held and even within the hunter/jumper discipline there are several ratings available for horse show competitions (e.g. AA, A, B and C).

that a dismissal for lack of subject matter jurisdiction is premature. However, for the reasons stated above, the Court finds that Plaintiffs have not pleaded allegations that support the elements of a section 1 violation of the Sherman Act.

### 4. Section 2 of the Sherman Act

■ Defendants assert that it is unclear from the Complaint as drafted in which monopoly-related activities Plaintiffs assert Defendants engaged, and under which theory or theories they expect to recover.

Section 2 of the Sherman Act is directed against "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States . . . ." 15 U.S.C. § 2. Broadly speaking, there are three distinct violations actionable under section 2 of the Sherman Act: (1) monopolization; (2) attempt to monopolize; and (3) conspiracy to monopolize. While the elements of monopolization and attempted monopolization are different, they share a number of common underlying principles. *See* ABA Section of Antitrust Law, Antitrust Law Developments (5th ed.2002).

In Plaintiffs' Response they rely heavily on *Covad Communications Company v. BellSouth Corporation,* 299 F.3d 1272 (11th Cir.2002) to support their contention that Count II states a Sherman Act section 2 claim and therefore should not be dismissed. The Court notes that Plaintiffs rely only on that portion of the opinion which provides the elements of a claim for monopolization under section 2 of the Sherman Act. The Court thereby concludes that Plaintiffs intended to proceed only under this theory. Therefore, the Court will not address Defendants' arguments that Plaintiffs fail to allege any concerted activity between or among De-

fendants as required for a section 2 conspiracy to monopolize claim.

To state a claim for monopolization, plaintiff must establish: (1) possession of monopoly power in the relevant market and (2) willful acquisition or maintenance of that power as distinguished from growth or development as consequence of superior product, business, acumen, or historic accident. *See Moecker,* 144 F.Supp.2d 1291 at 1308 (citing *United States v. Grinnell Corp.,* 384 U.S. 563, 570–571, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)); *see also Levine v. Central Florida Medical Affiliates et al.,* 72 F.3d 1538, 1554 (11th Cir.1996).

A plaintiff bringing a monopolization claim under section 2 of the Sherman Act must plead and prove the relevant market as an element of the claim. *See U.S. Anchor Manufacturing, Inc. v. Rule Industries, Inc.,* 7 F.3d 986, 994 (11th Cir. 1993). Defining the relevant market, which is plaintiff's burden, is essential to a monopolization claim. *See Aquatherm Industries, Inc. v. Florida Power & Light Company,* 971 F.Supp. 1419 (M.D.Fla. 1997) *affirmed* 145 F.3d 1258 (11th Cir. 1998). Under Eleventh Circuit law, the relevant market is composed of product and geographic components. *See Moecker,* 144 F.Supp.2d at 1302. "The basic rule that governs market definition was characterized by the Supreme Court as follows:

> In considering what is the relevant market for determining the control of price and competition, no more definite rule can be declared than that commodities reasonably interchangeable by consumers for the same purpose make up that 'part of the trade or commerce', monopolization of which may be illegal."

*See Moecker,* 144 F.Supp.2d at 1303 (citing *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 395, 76 S.Ct. 994, 100 L.Ed. 1264 (1956)). Failure to allege ei-

ther the product or geographic market in the complaint is fatal to the plaintiff's claims. *See Aquatherm,* 971 F.Supp. at 1425.

Relevant "product market" for purposes of a monopolization claim under Sherman Trust Act must include those products or services that are either identical to or substitutes for defendants' product or service. *Id.* Additionally, "[t]he reasonable interchangeability ... between a product and its substitutes" is an important consideration, as is the cross-elasticity of demand for the products. *See Aquatherm,* 971 F.Supp. at 1426 (citing *U.S. Anchor Mfg.,* 7 F.3d at 995 (interchangeability)(citing *Brown Shoe Co. v. United States,* 370 U.S. 294, 325, 82 S.Ct. 1502, 1523–24, 8 L.Ed.2d 510 (1962))). The relevant "geographic market" includes the area in which a potential buyer may rationally look for the goods or services he or she seeks. *See Aquatherm,* 971 F.Supp. at 1427. The relevant market is the "area of effective competition" in which competitors generally are willing to compete for the consumer potential and not the market area of a single company. *See American Key Corporation v. Cole National Corporation,* 762 F.2d 1569, 1581 (11th Cir.1985)(rejecting artificially narrow definition of relevant geographic market)(citing *Tampa Elec. Company v. Nashville Coal Co.,* 365 U.S. 320, 327–29, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961)).

Defining a relevant market is essential to establishing a monopolization claim under section 2 of the Sherman Act. The criteria for establishing a relevant market under section 1 and section 2 is essentially the same. *See Moecker,* 144 F.Supp.2d at 1302 n. 7. Again, Plaintiffs do not provide rationale why the relevant product market should be defined as "A" rated hunter and jumper Recognized Horse Shows. Plaintiffs fail to allege that "A" rated hunter and jumper Recognized Horse Shows are unique or explain why "A" rated hunter

and jumper Recognized Horse Shows are not part of the larger market for horse competitions. Further, Plaintiffs fail to delineate why the geographic market should be limited solely to the State of Florida and not the South/Southeast or even the United States as a whole. Therefore, the Court finds that Plaintiffs did not properly define a relevant market to sustain a monopolization claim under section 2 of the Sherman Act.

"Monopoly power is defined as the power to control prices or exclude competition." *See Covad,* 299 F.3d at 1283 (quoting *E.I. du Pont de Nemours & Co.,* 351 U.S. at 391, 76 S.Ct. 994); *see also Grinnell Corp.,* 384 U.S. at 571, 86 S.Ct. 1698. To make a determination as to whether monopoly power exists, it is necessary to define the relevant market in which the power over price or competition is alleged. Without a definition of that market there is no way to measure a defendant's ability to lessen or destroy competition. *See Walker Process Equipment, Inc. v. Food Machinery and Chemical Corporation,* 382 U.S. 172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *see also Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 459, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993). As the Court has determined that Plaintiffs have failed to define a relevant market, any analysis as to Defendants' monopoly power, and the willful acquisition or maintenance of that power, is premature. The Court finds that Plaintiffs' monopolization claim under section 2 of the Sherman Act is insufficient to state a cause of action.

Having considered the motions, and being otherwise fully advised, it is **ORDERED AND ADJUDGED** that:

(1) As to Plaintiff Gallagher, the Burton Defendants and Defendant Hodges Motions to Dismiss (Doc. Nos. 16 and 21) are **GRANTED;**

(2) The Burton Defendants, the Federation, the Bell Defendants and Defendant Hodges' Motions to Dismiss Counts I, II and III (Doc. Nos. 16, 17, 18 and 21) are **GRANTED**; and

(3) The Bell Defendants' Motion for More Definite Statement (Doc. No. 18) is **DENIED AS MOOT**;

(4) Plaintiffs are granted leave to amend the Complaint. Plaintiffs shall file and serve the Amended Complaint on or before April 18, 2003. Failure to do so shall result in this case being dismissed with prejudice.